# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
(Northern Division)

JAZMIN VALENTINE
19435 Maggies Court
Boonsboro, MD 21713,

and

J.R.B., *minor*
*by and through their mother*
JAZMIN VALENTINE
19435 Maggies Court
Boonsboro, MD 21713,

   Plaintiffs,

  v.

PRIMECARE MEDICAL, INC.
3940 Locust Lane
Harrisburg, PA 17109
 Serve on:
   The Corporation Trust, Incorporated
   2405 York Road
   Suite 201
   Lutherville Timonium, MD 21093,

NURSE B. MONAHAN
500 Western Maryland Pkwy
Hagerstown, MD 21740,

NURSE J. DIXON
500 Western Maryland Pkwy
Hagerstown, MD 21740,

NURSE SARAH ROCK
500 Western Maryland Pkwy
Hagerstown, MD 21740,

NURSE FNU GROFT
500 Western Maryland Pkwy
Hagerstown, MD 21740,

Civil Action No. 1:22-cv-2446

WASHINGTON COUNTY, MARYLAND
100 West Washington Street
Suite 1101
Hagerstown, MD 21740,

SHERIFF DOUGLAS W. MULLENDORE,
in his official and individual capacities,
500 Western Maryland Pkwy
Hagerstown, MD 21740,

SGT. E. ROCKWELL, in his official and
individual capacities,
500 Western Maryland Pkwy
Hagerstown, MD 21740,

DEPUTY SHERIFF R. SULLIVAN, in his
official and individual capacities,
500 Western Maryland Pkwy
Hagerstown, MD 21740,

and

DEPUTY SHERIFF E. MYERS, in his/her
official and individual capacities,
500 Western Maryland Pkwy
Hagerstown, MD 21740,

Defendants.

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs Jazmin Valentine and J.R.B., by and through their undersigned attorneys,

respectfully allege for their Complaint and Jury Demand as follows:

### INTRODUCTION

1.      On July 4, 2021, shortly after midnight, Plaintiff Jazmin Valentine gave birth to a

baby girl, J.R.B.

2.      What should have been one of the happiest days of her life was instead a day of

terror, pain, and humiliation that continues to cause her ongoing emotional trauma. Ms.

Valentine was forced to deliver Baby J.R.B. alone, with no medical care or assistance of any kind, on the filthy, cold, hard floor of a cement and steel jail cell at the Washington County Jail.

3.     Ms. Valentine had to endure this horrific experience despite the fact that multiple nurses and Washington County jail staff knew that: (1) she was mere days away from her due date at the time she delivered; (2) she had been in active labor for hours; (3) she was loudly screaming and begging for help; and (4) she was screaming in excruciating pain, begging for medical attention. Instead of ensuring that Ms. Valentine was able to give birth in a safe and sanitary medical setting, PrimeCare Medical nurses on contract with the County for medical services for jail inmates, as well as Washington County Sheriff's deputies, callously made her labor alone for hours, and ultimately give birth alone in a dirty jail cell without any medical care, all because it was *inconvenient* to examine her physically or to get her to a hospital when she told them she was in labor.

4.     Once Baby J.R.B. arrived, jail medical staff was totally unequipped to care for her, and the baby caught a MRSA infection due to the outrageous conditions of her birth. The conscience-shocking conduct by Washington County personnel and PrimeCare Medical, Inc. personnel, and their respective officials, violated Ms. Valentine's and Baby J.R.B.'s constitutional and state law rights. This suit is brought to hold to account the officials who cruelly chose convenience over compassion.

## JURISDICTION AND VENUE

5.     This action arises under the Constitution and laws of the United States and is brought pursuant to 42 U.S.C. § 1983. Jurisdiction is conferred on this Court pursuant to 28 U.S.C. § 1331.

6.      Jurisdiction supporting Plaintiffs' claim for attorney fees and costs is conferred by 42 U.S.C. § 1988.

7.      Venue is proper in the District of Maryland pursuant to 28 U.S.C. § 1391(b). All the events alleged herein occurred within the State of Maryland, and all of the parties were residents of the State at the time of the events giving rise to this Complaint.

8.      Supplemental pendent jurisdiction is based on 28 U.S.C. § 1367 because the violations of federal law alleged are substantial and the pendent causes of action derive from a common nucleus of operative facts.

**PARTIES**

9.      At all times relevant to this Complaint, Plaintiff Jazmin Valentine and all of the individual defendants were residents of and domiciled in the State of Maryland.

10.      At all times relevant to this Complaint, Plaintiff Baby J.R.B. was resident of and domiciled in the State of Maryland.

11.      Defendant Washington County, Maryland is a Maryland municipal corporation.

12.      Defendant Douglas W. Mullendore is the Washington County Sheriff and is responsible for the oversight, supervision, and training of the Sheriff's Department.

13.      At all relevant times, Washington County and Sheriff Mullendore had a nondelegable duty to provide adequate medical care to inmates and detainees at the Washington County Jail.

14.      Defendant PrimeCare Medical, Inc. is a corporation contracted by Washington County to provide medical care to inmates at the Washington County Jail.  At all times relevant to the subject matter of this litigation, PrimeCare Medical, Inc., acted under color of state law by

4

providing medical services and care at the Jail pursuant to an agreement (or agreements) with the Washington County.

15.     PrimeCare Medical, Inc., is a corporate entity headquartered in the State of Pennsylvania.

16.     Defendant Sgt. E. Rockwell was the shift commander on July 4, 2021, when Ms. Valentine gave birth.  He failed to train and supervise his staff on the proper procedures for insuring appropriate medical care for pregnant inmates in labor although his job required that he give such training and supervision.

17.     Defendant B. Monahan, a nurse with PrimeCare Medical, Inc. told Deputy Sheriff R. Sullivan that Ms. Valentine was "not in labor" but was "withdrawing from drugs" and refused to check on her.

18.     Defendant J. Dixon, a nurse with PrimeCare Medical, Inc. knew that Ms. Valentine was complaining she was in labor yet did nothing to assist her or monitor her.

19.     Defendant Nurse Sarah Rock, a nurse with PrimeCare Medical, Inc., knew that Ms. Valentine was complaining she was in labor yet did nothing to assist her or monitor her.

20.     Defendant Nurse Groft heard Ms. Valentine saying she was in labor and couldn't stand up to come to the door of her cell.  She said, "You were checked out on day shift and you are not in active labor, you are withdrawing.  You are not going out to the hospital."  She refused to check on whether Ms. Valentine was or was not in active labor.

21.     Defendant Deputy Sheriff E. Myers was with Nurse Groft and knew that Ms. Valentine was complaining about being in labor but failed to take any action to assist Ms. Valentine.

22.     Defendant Deputy Sheriff R. Sullivan discovered Ms. Valentine screaming for help with her impending birth just minutes before J.R.B. was born. Despite the apparent and explicit refusal of medical staff to provide vital care to Ms. Valentine and J.R.B., Defendant Sullivan took no action to contact emergency medical services or even to simply contact his own supervisor to obtain the medical care Ms. Valentine and J.R.B. obviously and desperately required.

## FACTUAL ALLEGATIONS

23.     On July 2, 2021, Ms. Valentine was booked into the Washington County Detention Center based on a warrant issued from Virginia alleging a probation violation.

24.     During the booking process, Ms. Valentine was interviewed by Sheriff's Office personnel, who were aware that Ms. Valentine was over eight months pregnant.

25.     As she was over eight months pregnant, Ms. Valentine's late-stage pregnancy was visually obvious to each security and medical staff member who encountered her at the Washington County Detention Center, including all individual Defendants.

26.      Upon intake, Ms. Valentine was put into a cell in close proximity to the nurse's station, as PrimeCare Medical personnel said they wanted to monitor her pregnancy.

27.     On the afternoon of July 3, 2021, Ms. Valentine went into labor.  This was her first child, and she did not know what to expect during the course of her labor and delivery.

28.     Once she felt contractions beginning, she began to alert both security personnel from the Sheriff's Department as well as medical personnel from PrimeCare Medical that she was in labor.

29.      Despite her notification to medical and jail personnel, none of the defendants took any action of any kind to make sure Ms. Valentine was being cared for medically.

30.     Instead, at approximately 1:15 p.m. on July 3, PrimeCare Nurse Sarah Rock issued paperwork directing that Ms. Valentine be moved from the detention center's medical unit to the general female housing unit.

31.     Nurse Rock did not medically examine Ms. Valentine prior to sending her back to the general female housing unit.

32.     At approximately 3:30 p.m., Ms. Valentine was sent back to the medical unit, ostensibly for medical observation.

33.     No PrimeCare Medical personnel maintained medical observation of Ms. Valentine.

34.     At approximately 7:00 p.m. on July 3, Ms. Valentine advised PrimeCare Nurse Groft and Deputy Sheriff Myers that she was having contractions, and that she would not be able to easily come to the cell door to receive her medications from Nurse Groft.

35.     Nurse Groft told Ms. Valentine that she was not in labor and would not be going to the hospital.

36.     Nurse Groft refused to bring the medications to Ms. Valentine and forced her to walk to the cell door to receive them as she endured the excruciating pain of ongoing contractions.

37.     Nurse Groft did not perform any exam of Ms. Valentine or possess any current knowledge of whether Ms. Valentine was in labor at this time.

38.     Though Deputy Myers observed Nurse Groft's refusal to provide Ms. Valentine with the obviously necessary medical assistance that any woman in labor would require, as well as Nurse Groft's refusal to even examine Ms. Valentine, Deputy Myers did not contact

emergency medical services, did not contact a supervisor, and did not otherwise make any effort to obtain such medical assistance for Ms. Valentine.

39.     For over six hours Ms. Valentine was left alone, screaming for help and that because she was in labor she needed urgent, immediate medical attention.

40.      During that time, no one checked on her or came to the door of her cell to see what she was doing or saying despite the fact that everyone in proximity could hear her begging for help.

41.     Another inmate in the jail heard Ms. Valentine screaming for help and placed a phone call to a friend, who in turn called Ms. Valentine's boyfriend, the father of the baby, alerting him that Ms. Valentine and the baby needed help urgently.

42.     Ms. Valentine's boyfriend then called the jail and tried to get them to check on her, to no avail.

43.     Ms. Valentine overheard a PrimeCare Medical nurse laughing while talking about Ms. Valentine's boyfriend calling the jail in an effort to obtain medical attention for the mother of his child.

44.     Ms. Valentine was ignored for approximately six hours; all the while she was screaming and begging the nurses and officers for help, as she was having contractions and was in labor, and the baby was coming.

45.     Jail staff and the PrimeCare Medical nurses laughed at Ms. Valentine, telling her she was "playing games trying to get out of [her] cell."

46.     Ms. Valentine screamed and begged for help for over six hours in a solitary confinement cell with no blankets or sheets.

8

47.     The pain was so intense that Ms. Valentine punched the cell walls while she was experiencing the worst contractions, which came every minute as the delivery was occurring.

48.     When a PrimeCare Medical nurse came to her cell door, Ms. Valentine told her how bad the contractions were, to which the nurse stated, "It's funny how you timed this act of having contractions for when I came to the door."

49.     Ms. Valentine begged the PrimeCare Medical nurse for help through sobs of pain, saying, "I'm not lying," hoping the nurse would finally listen and bring help.  Instead, the PrimeCare Medical nurse told her she "was fine" and should "just lay down," and left Ms. Valentine alone.

50.     Another PrimeCare Medical nurse told Ms. Valentine that her contractions were simply Braxton Hicks contractions, which are minor and a precursor to hard labor. Despite this being her first baby, Ms. Valentine knew that she needed to go to the hospital immediately, but all of her begging meant nothing to the PrimeCare Medical and Washington County personnel, who took *no action at all* to assist Ms. Valentine with her labor and delivery.

51.     Other inmates in the cells near her yelled, "She's in labor," passing the message down the cell block and trying to get an officer's attention, all to no avail.

52.     Ms. Valentine had never felt so helpless and hopeless.  She could not believe this was happening and that human beings could be so callous and cruel as the PrimeCare Medical nurses were.

53.     Ms. Valentine ended up pulling out what she believed to be her amniotic sac and sliding it under the cell door trying to prove that she wasn't lying and that she was really about to have a baby.

54.     A few minutes prior to the moment at which Ms. Valentine would give birth, Defendant Deputy R. Sullivan heard Ms. Valentine's pleas for help and her statements that she was in labor. Defendant Sullivan also saw Ms. Valentine lying on the mattress in her cell, apparently in the latter stages of delivery.

55.     Deputy Sullivan ran to the medical desk and notified Defendant Nurses Dixon and Monahan of the labor and impending birth.

56.     Nurse Monahan, still having performed no examination of Ms. Valentine and possessing no current information about whether she was in labor, told Deputy Sullivan that Ms. Valentine was not going to have a baby and that her condition was the result of drug withdrawals.

57.     Drug withdrawals do not cause women to be over eight months pregnant or to experience prenatal contractions or to deliver babies.

58.     Nurses Dixon and Monahan did not immediately rush to Ms. Valentine's cell to provide care during what would be a dangerous birth in an unsanitary cell without the medical equipment and personnel who could have assisted Ms. Valentine in a hospital setting.

59.     In fact, Nurses Dixon and Monahan did *nothing at all* to respond to or assist Ms. Valentine with baby J.R.B.'s impending birth. Instead, the PrimeCare Medical nurses sat in their office and continued to perform paperwork, wholly ignoring Deputy Sullivan's urgent message.

60.     Deputy Sullivan failed to take any action to obtain emergency medical assistance after the PrimeCare Medical nurses refused to treat Ms. Valentine and her baby, even though he had personally witnessed Ms. Valentine's condition: obviously in the latter stages of pregnancy, screaming for help with her impending birth, and without any medical assistance or even a sanitary place to give birth.

61.     Deputy Sullivan knew that the PrimeCare Medical nurses would not assist Ms. Valentine, as they had explicitly told him that they did not believe Ms. Valentine to be giving birth—a belief that Deputy Sullivan knew to be untrue from direct observation of Ms. Valentine's manifestly obvious condition.

62.     Deputy Sullivan did not attempt to contact a supervisor at the jail, nor did he dial 911 to contact emergency services to obtain the medical help Ms. Valentine and her baby desperately and obviously required.

63.     As the baby arrived, Ms. Valentine thought to herself, "I'm on my own and that's just what it was and nothing I do would change that." She believed that she was going to die, and so was her newborn daughter.

64.     Shortly after midnight on July 4th, 2021, Ms. Valentine gave birth to her daughter, J.R.B., her first child.

65.     Ms. Valentine experienced one of the most profound and painful moments in anyone's life, alone, on a filthy cell floor with no sanitation, no medical care, and no assistance of any kind. She had not so much as a blanket for comfort.

66.     When Ms. Valentine delivered baby J.R.B., she held her in her own hands, umbilical cord still intact, and all alone.

67.     Approximately fifteen minutes after Ms. Valentine delivered the baby, Deputy Sullivan made a round and shined a flashlight into her cell, only to discover baby J.R.B. in Ms. Valentine's arms.

68.     Ms. Valentine has never been so traumatized at any time in her life.

69.     Even after she successfully delivered her own baby, by herself, Ms. Valentine's ordeal did not end.

11

70.     For the first several minutes of J.R.B.'s life, Ms. Valentine had no assistance of any kind.

71.     Exhausted from labor and trapped in an unkempt and unsanitary jail cell, without so much as a response from the PrimeCare Medical nurses, Ms. Valentine was terrified that she and her baby would die.

72.     Defendants not only failed to transport Ms. Valentine to a hospital prior to the birth of J.R.B., they failed to contact outside medical assistance until *after the birth had occurred*.

73.     As a result, once medical staff bothered to take notice of the *newborn baby in their care* some 15 minutes after the birth*,* Ms. Valentine and J.R.B. had only the care of the same PrimeCare Medical nurses who had ignored and belittled Ms. Valentine over the course of her labor in the aftermath of the birth.

74.     Neither Nurse Dixon nor Nurse Monahan possessed the training or expertise to care for a newborn or for a woman who had just given birth.

75.     No PrimeCare Medical personnel, including the individual PrimeCare Defendants, made any preparation of any kind to provide medical assistance after a birth, as they had recklessly refused to acknowledge Ms. Valentine's labor despite her begging for help.

76.     PrimeCare Medical did not staff the Washington County Detention Facility with an OB/GYN at the time that Ms. Valentine gave birth.

77.     PrimeCare Medical did not staff the Washington County Detention Facility with a doctor or physician's assistant of any description at the time that Ms. Valentine gave birth.

78.     Neither PrimeCare Medical nor Washington County provided the Washington County Detention Facility with the necessary tools or equipment to effectively care for a newborn baby.

79.     The plain incompetence and apathy of the PrimeCare Medical nurses, who were unable and/or unwilling to so much as distinguish labor from withdrawal symptoms, frightened Ms. Valentine, who was given no option but to entrust her health and that of baby J.R.B. to the PrimeCare Medical staff.

80.     Due to the Defendants' needless delay in summoning medical assistance, paramedics did not arrive at Ms. Valentine's cell until approximately 12:40 a.m. on July 4, 2021—approximately half an hour after Mr. Valentine delivered baby J.R.B. by herself in her cell.

81.     For several minutes after the birth, no nurse dried or warmed Baby J.R.B.

82.     For several minutes (or more), no PrimeCare Medical nurse cleared the mucus from Baby J.R.B.'s nose and mouth.

83.     No PrimeCare Medical nurse applied antibiotic or antiseptic eyedrops to Baby J.R.B. to prevent eye infection.

84.     No PrimeCare Medical nurse provided Baby J.R.B. with a vitamin K injection after the birth.

85.     No PrimeCare Medical nurse provided Baby J.R.B. with a cap to warm her head.

86.     No PrimeCare Medical nurse provided Baby J.R.B. with a hepatitis B virus vaccine.

87.     No PrimeCare Medical nurse took any steps to provide necessary care to address risk factors to Baby J.R.B. associated with Ms. Valentine's use of prescribed medication, or other high-risk prenatal issues.

88.     No PrimeCare Medical nurse weighed or otherwise measured Baby J.R.B.

89.     No PrimeCare Medical nurse provided Baby J.R.B. with an identifying medical bracelet.

90.     PrimeCare Medical and Washington County's failure to provide Baby J.R.B. with even the most basic post-delivery care was not just negligent, it was deliberately indifferent to the baby's obvious, serious medical needs.

91.     All Defendants knew or should have known that the Washington County Detention Facility lacked the human and physical resources to appropriately care for a baby or a mother who had just given birth; as such, all Defendants had an even greater and more obvious responsibility to transport Ms. Valentine to a hospital when she went into labor. They took a terrible risk out of laziness and indifference.

92.     Ms. Valentine and baby J.R.B. did not arrive at the hospital until approximately 1:13 a.m. on July 4, 2021, over an hour after J.R.B.'s birth.

93.     The PrimeCare Medical nurses at Washington County Detention Facility did not even cut the umbilical cord between Ms. Valentine and baby J.R.B., lacking the training and equipment to do so.

94.     At the hospital it was determined that the baby had contracted MRSA from being born in that cell and she only weighed 4 lbs. 8 oz.

95.     Instead of Ms. Valentine's partner cutting the umbilical cord, the task was performed by a stranger.

96.     Had Ms. Valentine been properly cared for and hospitalized, her partner would have been there to witness the birth of his daughter. He would have cut the umbilical cord instead of an emergency medical technician, and Ms. Valentine would have celebrated the birth of her daughter with her family instead of spending the precious first minutes of J.R.B.'s life in fear that they would also be the last minutes of J.R.B.'s life.

97.     Despite the manifest failure of the PrimeCare Medical nursing staff to fulfill their obvious and essential medical and moral responsibilities, and the significant risk that their actions posed toward the safety and lives of Ms. Valentine and J.R.B., PrimeCare Medical Inc. did not terminate any of the involved medical staff including the individual PrimeCare Defendants.

98.     PrimeCare Medical Inc. did not meaningfully discipline Nurses Dixon, Monahan, Groft, or Rock for their involvement (or lack thereof) in the dangerous birth of J.R.B.

99.     Washington County did not seek to terminate its relationship with PrimeCare Medical Inc. in the aftermath of J.R.B.'s dangerous birth. It permitted PrimeCare Medical personnel to continue to care for patients at the Washington County Detention Center, evincing the lack of seriousness with which the County approaches inmate medical care in general and care for pregnant women in particular.

**STATEMENT OF CLAIMS FOR RELIEF**

**COUNT I**
**Violation of 42 U.S.C. § 1983 – 8th and/or 14th Amendment**
**Deliberately Indifferent Medical Care**
**(Plaintiffs against all Defendants)**

100.    Plaintiffs hereby incorporate all other paragraphs of this  Complaint as if fully set forth herein.

101.    Ms. Valentine and Baby J.R.B. were citizens of the United States, and Defendants to this claim are persons for the purposes of 42 U.S.C. § 1983.

102.    Ms. Valentine was a pre-trial detainee. Baby J.R.B. was not accused (or convicted of) any crime.

103.    As a pre-trial detainee, Ms. Valentine was protected from deliberate indifference to her serious medical needs by the Fourteenth Amendment. Baby J.R.B. was also protected from deliberate indifference to her serious medical needs by the Fourteenth Amendment

104.    Under the Fourteenth Amendment, Ms. Valentine and Baby J.R.B. are also protected from conduct that is not rationally related to a legitimate nonpunitive governmental purpose or actions that appear objectively excessive in relation to that purpose under *Kingsley v. Hendrickson,* 576 U.S. 389, 396-98 (2015).

105.    To the extent she was under any conviction, Ms. Valentine was also protected from deliberate indifference to her serious medical needs by the Eighth Amendment.

106.    Each Defendant knew of these clearly established rights at the time of Ms. Valentine's delivery of Baby J.R.B.

107.    At all times relevant hereto, each individual Defendant to this claim was acting under color of state law.

108.    Defendants knew of and disregarded the excessive risks associated with Ms. Valentine's and Baby J.R.B.'s serious medical conditions and nonetheless, with deliberate indifference, decided not to perform or obtain a medical evaluation or to provide or obtain necessary urgent medical care. They did so despite being expressly aware of Plaintiffs' serious medical needs and obvious need for the same, and they recklessly disregarded a substantial risk of physical harm to Plaintiffs.

109.    When Ms. Valentine, and others acting on her behalf, alerted each individual Defendant to her need and Baby J.R.B.'s need for medical assistance, Defendants acted with deliberate indifference to both Plaintiffs' readily apparent need for medical attention and both Plaintiffs' constitutional rights by refusing to obtain and provide any medical treatment.

110.    The individual Defendants acted with deliberate indifference to Ms. Valentine's medical condition, including her pregnancy, labor, delivery, and obvious need for medical attention. These Defendants acted with deliberate indifference to Baby J.R.B.'s medical conditions, including but not limited to post-delivery and natal care, and obvious need for medical attention.

111.    All of the deliberately indifferent acts of each individual Defendant were conducted within the scope of their official duties and employment.

112.    The acts or omissions of each Defendant were the legal and proximate cause of Ms. Valentine's and Baby J.R.B.'s injuries.

113.    At all times relevant to the allegations in this Complaint, Washington County and its officials, including Defendant Sheriff Mullendore, were acting under color of state law and had a non-delegable duty to provide constitutionality adequate medical care for inmates, including Ms. Valentine, and for Baby J.R.B.

114.    At all times relevant hereto, Prime Care Medical, Inc. was willfully a participant in a joint activity and acting under color of state law, as the legal and functional equivalent of a municipality providing medical care to inmates and any child born to them while in custody.

115.    The intentional acts or omissions of all Defendants were conducted within the scope of their official duties and employment.

116.    Washington County Defendants' and Prime Care Medical, Inc. Defendants' deliberately indifferent and unconstitutional policies, customs, and/or practices regarding provision of constitutionally adequate medical care as described were the moving and proximate cause of Plaintiffs' injuries.

117.    Washington County Defendants and Prime Care Medical, Inc. deliberately indifferently failed to properly train and supervise their employees to provide necessary medical care to detainees at the Washington County Detention Center.

118.    The failures in training, supervision, and policy regarding providing necessary medical assessment and care were so obvious that the failure to provide medical assessment and care was deliberately indifferent to the rights of Plaintiffs and the public.

119.    Washington County Defendants' and Prime Care Medical, Inc. Defendants' deliberately indifferent customs, and failures to train/supervise, are all actionable policy decisions that were moving forces and proximate causes of the violation of Plaintiffs' constitutional rights.

120.    The intentional actions and inaction of each individual Defendant, and policies, customs, and practices of Washington County Defendants and Prime Care Medical, Inc. as described herein, were also moving forces in and proximate causes of the deprivation of Plaintiffs' rights to due process and of the rights, privileges, liberties, and immunities secured by the Constitution of the United States of America and caused Plaintiffs other damages.

121.    Washington County and Sheriff Mullendore are also directly liable for their own policies and actions that are moving forces in this constitutional injury under the contract between Washington County Defendants and Prime Care, Inc., as Washington County

participated in negotiating and sponsoring this contract despite the knowledge of Prime Care, Inc's pervasive pattern of civil rights and human rights violations.

122.    As a direct result of Defendants' unlawful conduct, Ms. Valentine and Baby J.R.B. suffered extreme physical and mental pain and suffering.

123.    Plaintiffs are entitled to attorneys' fees and costs pursuant to 42 U.S.C.§1988, pre-judgment interest, and costs as allowable by law.

124.    In addition to compensatory, economic, consequential and special damages, Plaintiffs are entitled to punitive damages against individual Defendants, in that the actions were taken maliciously, willfully, or with a reckless or wanton disregard of the constitutional rights of Plaintiffs.

**COUNT II**
**42 U.S.C. § 1983**
**14th Amendment Substantive Due Process Violation – Special Relationship Liability**
**(Baby J.R.B. Against All Defendants)**

125.    Plaintiffs hereby incorporate all other paragraphs of this Complaint as if fully set forth herein.

126.    At all relevant times hereto, Defendants were acting under color of state law.

127.    At all relevant times to this Complaint, Baby J.R.B. had a clearly established constitutional right under the Fourteenth Amendment to the United States Constitution not to be deprived of liberty without due process of law, which encompassed her right to reasonable medical care.

128.    Defendants' actions and inactions, as described herein, deprived Baby J.R.B. of her clearly established constitutional right to be free from deprivations of liberty without due process of law.

129.    Baby J.R.B. had a special relationship with Defendants, in that she was in Defendants' legal custody and detention against her will at the time of her birth, and unable to provide or seek care for her own serious medical needs. That special relationship triggered an affirmative duty to protect Baby J.R.B. from harm.

130.    Defendants breached their affirmative duty to protect Baby J.R.B. by failing to ensure her safety from the risk of harm that lack of medical care and sanitation presented, even though Defendants were on notice that Baby J.R.B.'s birth was imminent and that Baby J.R.B. required special care during and immediately following her birth. These actions or inactions substantially departed from accepted professional judgment, practice or standards and from the duty to provide reasonable care under all the circumstances and created the conditions that caused the lack of medical care provided to Baby J.R.B.

131.    Defendants' conduct, as described herein, was intentional, willful, and wanton, and shocks the conscience.

132.    The acts and omissions of the individual Defendants were engaged in pursuant to the custom, policy, and practice of Washington County Defendants and Prime Care Medical, Inc., which failed to adequately and appropriately supervise or train its agents with respect to provision of medical care.

133.    Defendants' acts and omissions caused Baby J.R.B. damages in that J.R.B. suffered physical and mental injury, pain, discomfort, and unnecessary risks because of their acts and failures to act. Thus, Defendants' conduct resulted in a denial of Baby J.R.B.'s substantive due process rights.

134.    Defendants' acts or omissions were the legal and proximate cause of J.R.B.'s damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their

favor and against Defendants, and award them all relief as allowed by law and equity, including,

but not limited to the following:

    a.   Declaratory relief and injunctive relief, as appropriate;

    b.   Compensatory damages, including, but not limited to those for past and future pecuniary and non-pecuniary losses, physical and mental pain, humiliation, discomfort, fear, anxiety, loss of enjoyment of life, loss of liberty, privacy, and sense of security and individual dignity, and other non-pecuniary losses;

    c.   Punitive damages for all claims as allowed by law in an amount to be determined at trial;

    d.   Issuance of an Order mandating appropriate equitable relief, including but not limited to:

        i.   Issuance of a formal written apology from each Defendant to Plaintiffs;

        ii.   The imposition of policy changes designed to avoid future similar misconduct by Defendants;

        iii.   Mandatory training designed to avoid future similar misconduct by Defendants;

    e.   Pre-judgment and post-judgment interest at the highest lawful rate;

    f.   Attorneys' fees and costs; and

    g.   Such further relief as justice requires.

Respectfully Submitted,

Andrew D. Freeman, Fed. Bar No. 03867
Brown Goldstein & Levy, LLP
120 E. Baltimore Street, Suite 2500
Baltimore, MD  21202
Phone: 410.962.1030 x1313
Mobile: 410.404.4888
Facsimile: 410.385.0869
Email: adf@browngold.com

David A. Lane[1]
Reid Allison
1543 Champa Street, Suite 400
Denver, CO 80202
Phone: (303) 571-1000
Facsimile: (303) 571-1001
E-mail: dlane@kln-law.com
E-mail: rallison@kln-law.com

---

[1] Motions for pro have vice admission to be filed.

## **REQUEST FOR A TRIAL BY JURY**

Plaintiffs request a trial by jury on all issues so triable.

_____
Andrew D. Freeman

Dated:  September 27, 2022