## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

**JAZMIN VALENTINE, et al.,**                      *

  **Plaintiffs,**                      *

   **v.**                      *                      **Civ. No. JKB-22-2446**

**PRIMECARE MEDICAL, INC., et al.,**                      *

  **Defendants.**                      *

 *  *  *  *  *  *  *  *  *  *  *

### MEMORANDUM

 Before the Court are two Motions to Dismiss: one filed by PrimeCare Medical, Inc. ("PrimeCare") and one filed by Washington County, Maryland (the "County") and Sheriff Douglas W. Mullendore (the "Sheriff"). (Defs.' Mots., ECF Nos. 30, 31.) The allegations in this case, which the Court takes as true at this stage of litigation, are disturbing. The behavior described by Ms. Valentine falls seriously short of the standards of decency of any humane society. However, for the three Defendants at issue in this motion, the allegations fall short of the pleading standards necessary to move forward.[1] For that reason, the County's, Sheriff's, and PrimeCare's motions will be granted. The Plaintiffs will be granted leave to amend their pleadings.

### I. BACKGROUND[2]

 Plaintiff Jazmin Valentine alleges that she was ignored for hours while in labor and gave birth to her daughter, Plaintiff J.R.B., alone in a cell in the Washington County Detention Center

---

[1] No motions have been filed regarding Defendants Monahan, Dixon, Rock, Groft, Rockwell, Sullivan, or Myers and this Court makes no statement regarding the sufficiency of the allegations against them.

[2] Considering a motion to dismiss, the "well-pleaded allegations of the complaint" are accepted as true and "all reasonable inferences therefrom" are construed "in favor of the plaintiff." *DeMasters v. Carilion Clinic*, 796 F.3d 409, 416 (4th Cir. 2015) (citing *Ibarra v. U.S.*, 120 F.3d 472, 474 (4th Cir. 1997)). The Court recounts the relevant allegations with these principles in mind.

("WCDC").[3]   Ms. Valentine was booked into the WCDC on July 2, 2021 on a warrant for an alleged probation violation. (Compl., ECF No. 1 ¶ 23.) At the time, she was over eight months pregnant, which was "visually obvious" to everyone she encountered. (*Id.* ¶ 25.) The next day, Ms. Valentine began feeling contractions and told Sheriff's Department personnel and medical personnel that she was in labor. (*Id.* ¶ 28.) None of the staff members took any action in response and, without examining her, Defendant Rock, a nurse employed by PrimeCare, had Ms. Valentine moved from the medical unit to the general housing unit. (*Id.* ¶¶ 29–31.) Two hours later, Ms. Valentine was transferred back to the medical unit, "ostensibly for medical observation," but no one monitored her condition. (*Id.* ¶¶ 32–33.)

Around 7:00 p.m. on July 3, Ms. Valentine told Defendants Groft, a nurse employed by PrimeCare, and Myers, a deputy sheriff, that she was having contractions. (*Id.* ¶ 34). Without examining her, Groft told Ms. Valentine that she was not in labor and did not offer any medical assistance. (*Id.* ¶¶ 35–37.) Myers heard Ms. Valentine say she was having contractions and saw Groft fail to examine her but did not do anything to help Ms. Valentine. (*Id.* ¶ 38.)

For the next six hours, Ms. Valentine was alone in her cell, "screaming for help" because she was in labor. (*Id.* ¶ 39.) WCDC staff either ignored Ms. Valentine or mocked her and accused her of lying to get out of her cell. (*Id.* ¶¶ 44–46.) During that time, another detainee heard Ms. Valentine and got a message to Ms. Valentine's boyfriend saying that "Ms. Valentine and the baby needed help urgently." (*Id.* ¶ 41.) Ms. Valentine's boyfriend called the WCDC and asked them to check on Ms. Valentine, but no one did; Ms. Valentine heard a nurse laughing about her boyfriend's phone call. (*Id.* ¶¶ 42–43.) Ms. Valentine repeatedly told PrimeCare nurses that she was in labor and needed medical assistance; she even attempted to slide her amniotic sac under the

---

[3] Plaintiffs at times refer to the "Washington County Jail." The Court will assume that the Plaintiffs intended to refer to the WCDC.

2

door of her cell to prove she was in labor. (*Id.* ¶¶ 48–50, 53.) Other detainees heard Ms. Valentine's distress and attempted to get her medical attention but got no response. (*Id.* ¶ 51.)

Just before Ms. Valentine gave birth, Defendant Sullivan, a deputy, heard her say she was in labor, and saw her, "apparently in the latter stages of delivery." (*Id.* ¶ 54.) Sullivan ran and told Monahan and Dixon that Ms. Valentine was in labor and about to give birth but, without examining Ms. Valentine, Monahan told Sullivan that Ms. Valentine was not in labor but in drug withdrawal. (*Id.* ¶¶ 55–56.) Neither Dixon, nor Monahan, nor Sullivan took any meaningful action in response to Ms. Valentine's statements that she was in labor. (*Id.* ¶¶ 58–62.)

"Shortly after midnight on July 4, 2021," Ms. Valentine gave birth to J.R.B. (*Id.* ¶ 64.) Ms. Valentine delivered J.R.B. "with no medical assistance of any kind, on the filthy, cold, hard floor of a cement and steel jail cell." (*Id.* ¶ 2.) No one discovered Ms. Valentine and the newborn J.R.B. for approximately fifteen minutes. (*Id.* ¶¶ 66–68.) None of the medical staff were able to provide post-natal care for J.R.B. (*Id.* ¶¶ 74–91.) Paramedics did not arrive until approximately half an hour after Ms. Valentine gave birth and Ms. Valentine and J.R.B. did not arrive at the hospital until over an hour after the birth. (*Id.* ¶¶ 80, 92.) J.R.B. contracted an infection as a result of being born in unsanitary conditions. (*Id.* ¶ 94.) The experience "traumatized" Ms. Valentine, "[s]he believed that she was going to die, and so was her newborn daughter." (*Id.* ¶¶ 63, 68.)

Ms. Valentine and J.R.B. filed suit on September 27, 2022 against PrimeCare Medical, Inc., Nurse B. Monahan, Nurse J. Dixon, Nurse Sarah Rock, Nurse FNU Groft, Washington County, Maryland, Sheriff Douglas W. Mullendore (in his official and individual capacities), Sgt. E. Rockwell (in his official and individual capacities), Deputy Sheriff R. Sullivan (in his official and individual capacities), and Deputy Sheriff E. Myers (in his/her official and individual capacities). (*Id.*) PrimeCare, Washington County, and Sheriff Mullendore have moved to dismiss.

## II.    LEGAL STANDARDS

### A.    Motion to Dismiss

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  When considering a motion to dismiss pursuant to Rule 12(b)(6), the Court must "accept as true all well-pleaded allegations and view the complaint in the light most favorable to the plaintiff." *Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005).  The complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  To be plausible, the complaint must include "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  If the complaint offers mere "labels and conclusions" and "naked assertions devoid of further factual enhancement" it will not suffice. *Id.* (quotations omitted).

### B.    § 1983

42 U.S.C. § 1983 provides "a method for vindicating federal rights." *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quotation omitted).[4]  It allows suits against any person acting under color of state law who subjects them to "the deprivation of any rights, privileges, or immunities secured by the Constitution." 42 U.S.C. § 1983.  Municipalities are "persons" suable under § 1983. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).  To state a claim under § 1983, a plaintiff must allege that a federal right has been violated and that the violator was acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).  The Parties do not dispute that the

---

[4] Plaintiffs style Count I of their complaint as a violation of § 1983, (Compl., ECF No. 1 at 15), but this is incorrect. Section 1983 does not confer substantive rights, it is merely the vehicle for the suit. *See Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985) (citation omitted).  The Court will read Count I as alleging a violation of the Eighth and/or Fourteenth Amendments.

Defendants were acting under color of state law.[5]  Plaintiffs argue that PrimeCare, the County, and

the Sheriff are liable because they failed to train and/or supervise the medical and non-medical

personnel working in the WCDC.

### C.   Municipal Liability

"[A] municipality cannot be held liable *solely* because it employs a tortfeasor." *Monell*,

436 U.S. at 691; *Bd. of Cnty Comm'rs v. Brown*, 520 U.S. 397, 403 (1997) ("[A] municipality may

not be held liable under § 1983 solely because it employs a tortfeasor.").  Plaintiffs seeking to hold

a municipality liable under § 1983 must "identify a 'policy' or 'custom' that caused the injury."

*Id.* (citations omitted).  There are three ways a plaintiff can demonstrate an official policy: (1) "a

written ordinance or regulation;" (2) "certain affirmative decisions of policymaking officials;" and

(3) "certain omissions made by policymaking officials that 'manifest deliberate indifference to the

rights of citizens.'"  *Saltz v. City of Frederick*, 538 F.Supp.3d 510, 554 (D. Md. 2021) (citing

*Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999)).

### D.   Failure to Train

To state a "failure to train" claim a plaintiff must allege (1) that "an employee of the

municipality violated the plaintiff's constitutional or statutory rights," (2) "the municipality failed

to train its employees, manifesting a 'deliberate indifference' to the rights of citizens," and (3) "the

failure to train actually caused the employees to violate the plaintiff's rights." *See Artiga Carrero*

*v. Farrelly*, 270 F.Supp.3d 851, 864 (D. Md. 2017) (describing holding a municipality liable for a

failure to train as "an uphill battle") (citing *Canton*, 489 U.S. at 388–92).  The training, or lack

thereof, of law enforcement personnel is "necessarily a matter of 'policy'" for liability under

---

[5] While private actors, like PrimeCare, generally have no constitutional duties, if the state has delegated its "affirmative obligation to provide adequate medical care," as was delegated to PrimeCare and its employees in this circumstance, a private actor is a state actor for the purpose of § 1983. *See West*, 487 U.S. at 54–56 (1988).

*Monell*. *Spell v. McDaniel*, 824 F.2d 1380, 1389 (4th Cir. 1987). But the training failure must "evidence[] deliberate indifference" to be actionable under § 1983. *City of Canton v. Harris*, 489 U.S. 378, 389 (1989). This is a stringent standard requiring the municipality to have "disregarded a known or obvious consequence" of its action. *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (quoting *Brown*, 520 U.S. at 410). Generally, a pattern of violations is necessary to show a failure to train. *Id.* at 62. Alternatively a plaintiff must show "that the constitutional violation at issue was the 'patently obvious' or 'highly predictable' consequence of the municipality's failure to provide additional specified training." *Artiga Carrero*, 270 F.Supp.3d at 865 (quoting *Connick*, 563 U.S. at 64). A plaintiff must do more than offer "bald assertions that [officers] were not properly trained." *Grim v. Balt. Police Dep't*, Civ. No. ELH-18-3864, 2019 WL 5865561, at *18 (D. Md. Nov. 8, 2019).

### E.    Supervisory Liability

Supervisors are not vicariously liable for the actions of their supervisees under § 1983. *Scarberry v. Bowman*, 16 F.3d 411, at *2 (4th Cir. 1993) ("A medical treatment claim cannot be brought against a supervisor absent an allegation that he was personally connected with the denial.") (unpublished table decision). To state a supervisory liability claim, a plaintiff must allege (1) "that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff," (2) "that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices," and (3) "that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (quotations and citations omitted). Specific to medical care in a detention setting, supervisors can

6

be held liable under § 1983 only if they "failed to promptly provide an inmate with needed medical care, deliberately interfered with the prison doctor's performance, tacitly authorized or were indifferent to a prison physician's constitutional violations, [] or were responsible for alleged training deficiencies which caused harm." *Scarberry*, 16 F.3d at *2 (citing *Miltier v. Beorn*, 896 F.2d 848, 854 (4th Cir. 1990) and *Mitchell v. Aluisi*, 872 F.2d 577, 581 (4th Cir. 1989)).

For a municipality to be held liable in turn, at minimum, the allegedly deficient supervisor must be a "policymaker" such that their actions are potentially attributable to the municipality. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 483–84 (1986) ("We hold that municipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question."); *see also Open Just. Balt. v. Balt. City Law Dep't*, Civ. No. ELH-22-1901, 2023 WL 5153654, at *25 (D. Md. Aug. 10, 2023) ("[P]laintiffs have failed to allege that a policymaker had actual or constructive knowledge of any constitutional violations, or that a policymaker failed to correct the improper conduct due to deliberate indifference.").

## III. UNDERLYING CONSTITUTIONAL VIOLATIONS

To consider whether the County, Sheriff, or PrimeCare can be held liable for failing to train and/or supervise their employees, the Court must first consider whether Plaintiffs have successfully alleged underlying constitutional violations committed by those employees. *See Shaw*, 13 F.3d at 799; *Artiga Carrero*, 270 F.Supp.3d at 864.

### A. Standard

Ms. Valentine and J.R.B. allege that their Eighth and/or Fourteenth Amendment rights were violated when Defendants' employees or supervisees were deliberately indifferent to serious

7

medical needs. J.R.B. further alleges that her Fourteenth Amendment Substantive Due Process rights were violated. While Plaintiffs allege violations of multiple clauses of multiple Amendments, the applicable standard for these violations is the same: deliberate indifference.

Count I alleges a violation of the Eighth and/or Fourteenth Amendments. (Compl., ECF No. 1 at 15.) Pretrial detainees are protected while in custody by the Due Process clause of Fourteenth Amendment, while people serving sentences post-conviction are protected by the Eighth Amendment. *Brown v. Harris*, 240 F.3d 383, 388 (4th Cir. 2001). As an alleged probation violator, it is not clear under 4th Circuit precedent which Amendment protects Ms. Valentine. *See Id.* (considering whether the "formal adjudication of guilt" for the underlying crime was sufficient for the Eighth Amendment apply or if a "formal adjudication" regarding the probation violation is necessary). However, in the Fourth Circuit this is a distinction without a difference, because the Eighth Amendment standard of "deliberate indifference to serious medical needs" is applied to pretrial and post-conviction detainees alike. *Hill v. Nicodemus*, 979 F.2d 987, 991–92 (4th Cir. 1992). Accordingly, the Court need not decide at this time whether Ms. Valentine's claim is properly under the Eighth or Fourteenth Amendment; the standard will be the same regardless: deliberate indifference.

Turning to Substantive Due Process, normally, to bring a Substantive Due Process claim, the plaintiff must describe conduct that "shocks the conscience." *See generally Cnty of Sacramento v. Lewis*, 523 U.S. 833 (1998). However, where a person is in state custody, as J.R.B. was, the state assumes a higher duty. *DeShaney v. Winnebago Cnty Dep't of Soc. Servs.*, 489 U.S. 189, 199–200 (1989) ("[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being."); *see also Havard v. Wayne Cnty*, 436 F. App'x 451, 454 (6th.

8

Cir. 2011) ("The state assumed custody and control of [the child] upon her birth in the Wayne County Jail. Defendants therefore had an affirmative duty to care for her.").

The standard is similar, if not identical, to the standard for constitutionally adequate medical care for pretrial detainees in the Fourth Circuit: if the state actor is "plainly placed on notice of a danger and chose to ignore the danger" then liability may be imposed. *Doe ex rel. Johnson v. South Carolina Dep't of Soc. Servs.*, 597 F.3d 163, 175 (4th Cir. 2010) (quoting *White ex rel. White v. Chambliss*, 112 F.3d 731, 737 (4th Cir. 1997)); *see also Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 302 (4th Cir. 2004) ("In cases where the government is accused of failing to attend to a detainee's serious medical needs, and in cases where the government is accused of failing to protect a detainee from a substantial risk of physical harm, conduct that amounts to deliberate indifference is viewed as sufficiently shocking to the conscience that it can support a Fourteenth Amendment claim.") (internal quotations and alterations omitted). Accordingly, the Court will look to the Eighth Amendment deliberate indifference standard for both counts and both Plaintiffs.[6]

To state a claim related to the denial of adequate medical care in a detention setting, a detainee must "allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). To be held liable, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The test is two pronged, the detainee must plausibly allege both an objective and subjective element. *Stevens v. Holler*, 68 F.4th 921, 931 (4th Cir. 2023). The

---

[6] The briefing reveals at least some confusion, if not a full dispute, about the appropriate standard for the Substantive Due Process claim. The Court notes that even under the higher "shocks the conscience" standard, J.R.B.'s claim could proceed. Plaintiffs allege that WCDC employees and contractors listened to Ms. Valentine scream in pain for hours while in labor and left her alone to give birth to J.R.B. in a dirty jail cell without any medical care of any kind. This is much more than mere negligence, it is "quite extreme governmental wrongdoing" and is sufficient to meet the higher standard, were that standard applicable here. *See Waybright v. Frederick Cnty*, 528 F.3d 199, 208 (4th Cir. 2008).

allegations must show (1) that the detainee was "exposed to a substantial risk of serious harm (the objective prong)" and (2) that the "prison official knew of and disregarded that substantial risk to the inmate's health or safety (the subjective prong)." *Id.* The Court can "presume[] awareness from a risk's obviousness." *Farmer*, 511 U.S. at 840. Ignoring "indications that a prisoner's or pretrial detainee's initial medical treatment was inadequate" can be deliberate indifference. *Cooper v. Dyke*, 814 F.2d 941, 945 (4th Cir. 1987).

**B.    Analysis**

Ms. Valentine and J.R.B. have clearly alleged constitutional violations. They allege that the Defendant nurses and WCDC officials knew that Ms. Valentine was over eight months pregnant, because it was "visually obvious" to everyone she encountered. (Compl., ECF No. 1 ¶ 24–25.) They allege that Ms. Valentine and others repeatedly told medical and non-medical staff that she was in labor or having contractions. (*Id.* at ¶ 28, 34, 39, 42, 48, 49, 50, 51, 54.) They allege that no PrimeCare or WCDC employees took any meaningful steps to help Ms. Valentine, they did not even examine her; at best they ignored her, at worst they laughed at her. (*Id.* at ¶ 29, 31, 33, 37, 38, 40, 43, 45, 48, 49, 50, 56, 59, 60.) As a result, Ms. Valentine went through her entire labor and gave birth "alone, on a filthy cell floor with no sanitation, no medical care, and no assistance of any kind." (*Id.* at ¶ 65.) And, because no WCDC or PrimeCare staff responded to Ms. Valentine's pleas for help, no one was available to provide any medical care for J.R.B. for at least fifteen minutes after her birth. (*Id.* at ¶ 67.) Further, because the Defendants did not take Ms. Valentine to the hospital until well after the birth, no one was present in the aftermath with any medical ability to provide "even the most basic post-delivery care." (ECF No. 1 at ¶ 72–92.)

This is textbook deliberate indifference. Looking to the first prong, the Plaintiffs must allege that they were "exposed to a substantial risk of serious harm." *Stevens*, 68 F.4th at 930. As

many other courts have recognized, labor and childbirth are serious medical events, posing significant risks for both the mother and the baby. *See Doe v. Gustavus*, 294 F.Supp.2d 1003, 1008 (E.D. Wis. 2003) ("Having medical assistance immediately preceding and during a birth is, in today's society, taken for granted.");. *Webb v. Jessamine Cnty Fiscal Ct.*, 802 F.Supp.2d 870, 878 (E.D. Ky. 2011) ("[A]n inmate in labor has a serious medical need."); *Havard*, 436 F. App'x at 455 ("The virtually inevitable result of pregnancy and labor is the birth of a child. The birth of a child always presents a risk of serious injury to both mother and child."). Plaintiffs have adequately alleged the first prong, and the Defendants do not appear to dispute that labor and childbirth are medical events posing serious risks.

Looking to the second prong, Plaintiffs must allege that the "official knew of and disregarded that substantial risk to the inmate's health or safety." *Stevens*, 68 F.4th at 930. Plaintiffs clearly allege that PrimeCare employees and WCDC staff knew that she was in labor. (Compl., ECF No. 1 at ¶ 3, 61, 108, 130.) Even if Plaintiffs did not allege actual knowledge, the Court can easily infer that PrimeCare employees and WCDC staff were aware of a substantial risk. If an obviously pregnant and in pain woman tells someone, even a lay person, that she is in labor, that person must at least know that there is a substantial risk that the woman is, in fact, in labor. *See Strickland v. Halsey*, 638 F. App'x 179, 187 (4th Cir. 2015) (holding that officials need not know of "a *certain* risk," knowledge of a "substantial risk" is sufficient).

The County and Sheriff argue that their employees and subordinates were not deliberately indifferent because they were entitled to rely on the medical advice of PrimeCare's nurses. This argument in unavailing given the allegations. It is true that "the fact that a trained medical technician did not recognize [a] risk . . . strongly suggests that the risk was something less than obvious." *Parrish*, 372 F.3d at 306. But Plaintiffs allege that Ms. Valentine was never examined

11

by any of the medical staff. (Compl., ECF No. 1 at ¶ 31, 37, 56.) Without an examination, there can be no medical opinion to rely on. *See Iko v. Shreve*, 535 F.3d 225, 242 (4th Cir. 2008) ("This case is further distinguishable from the precedent on which the officers seek to rely because it is undisputed that [the detainee] received *no* medical treatment whatsoever. There was therefore *no* medical opinion to which the officers could have deferred.")

Further, Ms. Valentine (and eventually J.R.B.) were in the County's custody and its deputies had the ultimate responsibility to ensure that the Plaintiffs received constitutionally adequate medical care. Their failure to investigate cries for help and obvious disregard from PrimeCare staff does not fulfill that responsibility. *See Id.* ("This case does not, however, present a situation in which prison officials might be held liable for the actions or inactions of a medical professional. The officers face liability for *their own* decisions, made while [the detainee] was in their charge."); *Brice v. Virginia Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995) ("[E]ven a guard able to prove that he was in fact oblivious to an obvious injury of sufficient seriousness may not escape liability if it is shown, for example, that he . . . 'declined to confirm inferences of risk that he strongly suspected to exist.'") (quoting *Farmer*, 511 U.S. at 843 n. 8).

The cases the County and Sheriff cite in support of this argument are inapposite. In *Miltier*, "no record evidence suggest[ed] why the wardens should not have been entitled to rely upon their health care providers' expertise." *Miltier v. Beorn*, 896 F.2d 848, 854 (4th Cir. 1990). By contrast, Plaintiffs have alleged that Ms. Valentine's condition (late pregnancy) was obvious to those around her, that she repeatedly told non-medical staff that she was in labor, and that she *was never examined by any medical staff*. If proven, each of these allegations lend support to the assertion that the deputies were not entitled to rely on the nurses' assessments. Correctional staff are not entitled to rely on medical judgments from individuals who do not have direct knowledge of the

12

circumstances of the patient. *Shakka v. Smith* is inapposite for the same reason; there the prison

psychologist had met with and evaluated the detainee. 71 F.3d 162 (4th Cir. 1995). As is *Gardner*

*v. United States*. 184 F.Supp.3d 175 (D. Md. 2016) (noting that the correctional officer relied on a

doctor's order after the doctor met with the detainee and conducted "examinations and tests").

Additionally, even if it were permissible for the deputies to accept the nurses' assertions

that Ms. Valentine was not in labor, it is still not constitutionally permissible to provide *zero* care

if a woman is screaming in pain and begging for help. Where "the official's response to a perceived

risk [is] patently inadequate" it justifies "an inference that the official actually recognized that his

response to the risk was inappropriate under the circumstances." *Parrish*, 372 F.3d at 303. The

denial of *any* care, as alleged in this circumstance, is "patently inadequate."

## IV.   DEFENDANTS' LIABILITY

Having decided that Plaintiffs have successfully alleged constitutional violations

committed by Defendants' employees and supervisees, the Court turns to the question of whether

the allegations in the complaint are sufficient to hold the County, the Sheriff or PrimeCare liable.

They are not sufficient.

### A.   Washington County

The allegations regarding the County are thin. Plaintiffs make only the following relevant

contentions about the County: (1) the County did not provide the WCDC with the necessary tools

to care for a newborn, (2) the County had obviously deliberately indifferent policies, customs, or

practices regarding medical care, which caused Plaintiffs' injuries, (3) the County deliberately

indifferently failed to train and supervise employees to provide necessary care, (4) the County

negotiated a contract with PrimeCare despite knowledge of PrimeCare's pervasive pattern of civil

rights and human rights violations, and (5) the County did not terminate its contract with

13

PrimeCare. (ECF No. 1 at ¶¶ 78, 99, 116, 117, 118, 119, 121, 132.) These allegations are devoid of the specifics necessary to state a claim for either a failure to supervise or a failure to train.

First, to state a supervisory liability claim, a plaintiff must allege that the supervisor was deliberately indifferent in the face of "actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury." *Shaw*, 13 F.3d at 799 (quotation omitted). Nowhere do Plaintiffs allege facts supporting a contention that the County, or anyone whose knowledge could be attributable to the County, knew about or should have known about Ms. Valentine, her pregnancy, or the failure to provide her medical care. The strongest allegation supporting such a conclusion, that the County hired PrimeCare "despite knowledge of PrimeCare's pervasive pattern of civil rights and human rights violations" is not sufficient. (*See* Compl., ECF No. 1 at ¶ 121.) That allegation is conclusory, it offers no specifics regarding the violations, how they relate to Plaintiffs' claims, or how the County knew (or even should have known) about them. In short, Plaintiffs allege no facts that, if true, would "buttress [their] legal conclusion." *Owens v. Balt. City State's Att'y's Off.*, 767 F.3d 379, 403 (4th Cir. 2014) (recognizing that courts "have dismissed *Monell* claims where the plaintiff has alleged nothing more than a municipality's adherence to an impermissible custom").

Turning to failure to train, Plaintiffs' allegations are again insufficient. While Plaintiffs do allege that the County "deliberately indifferently failed to train" its employees, there are, again, no specifics offered. (*See, e.g.,* Compl. ECF No. 1 ¶ 117.) Plaintiffs' allegations do not explain how the training was lacking. *Cf. Johnson v. Balt. Police Dep't*, Civ. No. ELH-19-00698, 2020 WL 1169739, at *33 (D. Md. Mar. 10, 2020) ("The Complaint contains far more than boilerplate allegations that the [Baltimore Police Department] failed to train and supervise its officers. Plaintiff identifies a specific deficiency with BPD's training: its failure to train officers on the

14

obligation to disclose exculpatory information as required by Brady and failing to supervise and discipline officers for fabricating evidence.") Nor do they allege that the County was aware of the training failure, how it was aware (or should have been aware), or what the County did (or failed to do) in response.   Alleging mere "adherence to an impermissible custom" without facts buttressing that conclusion is insufficient. *Owens*, 767 F.3d at 403.

Plaintiffs do allege that Defendant Rockwell, the shift commander on July 4, 2021, "failed to train his staff on the proper procedures for insuring appropriate medical care for pregnant inmates in labor." (Compl. ECF No. 1 ¶ 16.)  Regardless of whether this single allegation would be sufficient to state a claim against the County, a municipality is only liable for "choices or decisions of municipal officials authorized to make and implement municipal policy." *Spell*, 824 F.2d at 1386.  Plaintiffs do not argue that Rockwell was authorized to make municipal policy or allege any facts supporting the conclusion that he was a "policymaker" for the purposes of municipal liability. *See Howard v. City of Durham*, 68 F.4th 934, 953–54 (4th Cir. 2023) (noting that "whether an official has sufficient policymaking authority" to make the municipality liable for their actions is a question of state law and that the Fourth Circuit "has already rejected the idea that a police captain can set policies for a city").

The Court acknowledges the significant information disparity between the Parties at this stage of the litigation. Defendants unquestionably have more information about their internal training regimens than Plaintiffs do.  The Plaintiffs need not allege "specific details regarding the municipal actor's internal policies and training procedures." *Balt. Police Dep't*, 2020 WL 1169739, at *34.  But the allegations regarding the County could be copied from almost any civil rights complaint alleging municipal liability for a failure to train and/or supervise. There is almost

no factual support for the legal conclusions offered.   The Plaintiffs must offer more than "boilerplate allegations." *Id.* The claims against the County will be dismissed.

### B. PrimeCare

The allegations regarding PrimeCare are similar to those against the County.   Plaintiffs allege no additional facts except that, (1) PrimeCare did not staff the WCDC with an OB/GYN, doctor, or physician's assistant, (2) PrimeCare did not provide the WCDC with the tools to care for a newborn, and (3) PrimeCare did not terminate or meaningfully discipline any of the nurses involved with Ms. Valentine's care. (Compl. ECF No. 1 ¶¶ 76–78, 97–98.) These minor additional allegations do not, however, buttress Plaintiffs' contention PrimeCare is liable for a failure to train/supervise because they do not elaborate on PrimeCare's specific training deficiencies, notice to PrimeCare of the training issues, or PrimeCare's alleged history of civil and human rights violations. *See Owens,* 767 F.3d at 403 ("A plaintiff fails to state a claim only when he offers 'labels and conclusions' or formulaically recites the elements of his § 1983 cause of action.").

Plaintiffs argue that the severity of the allegations supports an inference that the PrimeCare nurses were not properly trained.  (Pls.' Opp'n, ECF No. 40 at 10.)  As previously noted, the allegations are disturbing.  But that is not sufficient to state a failure to train claim.  Plaintiffs are required to identify a specific omission and awareness on the part of the entity of the omission and the risks it posed; in other words, facts showing deliberation on the part of the Defendant. *Balt. Police Dep't,* 2020 WL 1169739, at *31–33; *Canton,* 489 U.S. at 389 ("Only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality—a 'policy' as defined by our prior cases—can a city be liable for such a failure under § 1983."). These specifics are entirely missing from Plaintiffs' complaint.  The seriousness of the conduct alleged is not enough to fill in so large a gap.

16

Because the allegations against the County were insufficient, the Plaintiffs' allegations against PrimeCare do not offer additional relevant details, and the same legal standards apply, the reasoning above applies with equal force. *Haughie v. Wexford Health Sources, Inc.*, Civ. No. ELH-18-3963, 2020 WL 5593007, at \*15 (D. Md. Sept. 17, 2020) ("Standards applicable to municipalities are also applicable to private corporations acting under color of state law.") (citing *Rodriguez v. Smithfield Packing Co.*, 338 F.3d 348, 355 (4th Cir. 2003)). Accordingly, the claims against PrimeCare will be dismissed.

### C.     Sheriff Mullendore

Before turning to whether Plaintiffs have stated a claim against Sheriff Mullendore, the Court will consider whether he is immune from suit in his official capacity. Because the Sherriff is immune from suits for money damages in his official capacity, the claims against the Sheriff in his official capacity will be dismissed.

#### 1.     Official Capacity

To begin, the Plaintiffs do not disagree that the claims against the Sheriff in his official capacity can be dismissed. (Pls.' Opp'n, ECF No. 39 at 9 n.1.) But, because they appear to misunderstand the Sheriff's role, they reach this conclusion for the wrong reason. Under Maryland law, the Sheriff is a *state* officer, not a *municipal* officer. *Rossignol v. Voorhaar*, 321 F.Supp.2d 642, 651 (D. Md. 2004). A suit against the Sheriff in his official capacity is not the same as a suit against the *County*, as Plaintiffs suggest, but rather it is, in essence, a suit against the State of Maryland. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such it is no different from a suit against the State itself.) (citation omitted).

17

Therefore, Eleventh Amendment sovereign immunity bars the claims against the Sheriff for money damages. *Id.* at 70.

However, the Eleventh Amendment does not bar claims for injunctive relief pursuant to *Ex Parte Young*. 209 U.S. 123 (1908). While Plaintiffs have requested injunctive relief, they do not adequately allege an *ongoing* deprivation of rights attributable to the Sheriff, as is necessary to bring suit pursuant to *Ex Parte Young*. *Verizon Maryland, Inc. v. Pub. Serv. Comm'n*, 535 U.S. 635, 645 (2002) ("In determining whether the doctrine of *Ex Parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.") (internal quotation and alternation omitted). Further, Plaintiffs do not raise *Ex Parte Young* in their briefing and the Court will not make this argument on their behalf. Accordingly, all claims against Sheriff Mullendore in his official capacity will be dismissed.

### 2.   Personal Capacity

In his individual capacity, however, Sheriff Mullendore is not immune from suit. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("On the merits, to establish *personal* liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right."). The Court will now consider whether there are sufficient allegations in the complaint to state a claim against the Sheriff in his individual capacity. Because there are not, the claims against the Sheriff will be dismissed.

The allegations regarding Sheriff Mullendore are the thinnest of all the allegations in the Complaint. And, like the County and PrimeCare, the allegations in the complaint as currently drafted are insufficient to state a claim against Sheriff Mullendore. There are, essentially, three allegations regarding Sheriff Mullendore: (1) that he was responsible for the oversight,

supervision, and training of the Sheriff's Department, (2) that he had a nondelegable duty to provide adequate medical care in the WCDC, and (3) that he supervised a contract with PrimeCare. (*See* Compl., ECF No. 1 at ¶¶ 12, 13, 121.) Plaintiffs do not even allege that the Sheriff failed to train or supervise the deputies. Even the boilerplate allegations regarding the County's failure to train are not recounted regarding the Sheriff. For these reasons, and for the reasons stated above pertaining to the County, the claims against the Sheriff in his individual capacity will be dismissed.

## V.   ADDITIONAL ISSUES

### A.   Punitive Damages

Because the County has been dismissed from this case, ruling on its objection to punitive damages is no longer necessary. However, the Court notes (and the Plaintiffs agree) that punitive damages are not available against the County in cases brought pursuant to § 1983. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981).

### B.   Bifurcation

Because the Court will grant the County and Sheriff's motion to dismiss, the alternative request for bifurcation is moot and will be denied without prejudice. Defendants are free to reraise the issue if Plaintiffs choose to amend their complaint.

## VI.   CONCLUSION

For the foregoing reasons, the Motions to Dismiss the County, Sheriff, and PrimeCare will be granted. Plaintiffs will be granted leave to amend their complaint. A separate Order will follow.


DATED this ___5___ day of October, 2023.

BY THE COURT:

James K. Bredar
Chief Judge

19