IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JAZMIN VALENTINE, *et al.*, | * | |
| Plaintiffs, | * | |
| v. | * | Civ. No. JKB-22-2446 |
| NURSE B. MONAHAN, *et al.*, | * | |
| Defendants. | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM AND ORDER

Now before the Court is Plaintiffs' Motion for Leave to File an Amended Complaint. (ECF No. 76.) The Motion is fully briefed, and no hearing is required. *See* Local Rule 105.6 (D. Md. 2023).

For the reasons below, the Motion will be denied.

## I. BACKGROUND

This case arises from events that took place at the Washington County Detention Center ("WCDC"). Plaintiff Jazmin Valentine alleges that, in July 2021, she "was ignored for hours while in labor and gave birth to her daughter, Plaintiff J.R.B., alone in a cell." (ECF No. 49 at 1.) Based on the alleged indifference of the WCDC's staff, in September 2022, Valentine and J.R.B. sued for violations of the Eighth and Fourteenth Amendments. (ECF No. 1 ¶¶ 100–34.)

In early October 2023, the Court dismissed all claims against three defendants: the sheriff of Washington County; the WCDC's medical-services contractor, PrimeCare Medical, Inc.; and Washington County itself. (*See generally* ECF Nos. 49–50.) It also gave Plaintiffs twenty-one days to amend. (ECF No. 50 at 1.)

At the end of the twenty-one days, Plaintiffs felt "that the appropriate route forward [wa]s

to proceed promptly with discovery without attempting to amend the complaint." (ECF No. 51 at 1.) But they wanted an opportunity to re-add the former defendants if discovery revealed new evidence. (*See id.*) So, they asked for a schedule "that include[d] the opportunity for Plaintiffs to add (or re-name) additional defendants . . . after receiving responses to written discovery and taking the depositions of the individual defendants"—both of which, they added, they "w[ould] commence promptly." (*Id.*)

In November 2023, the Court entered its first discovery scheduling order. (ECF No. 54.) It set March 14, 2024, as the new deadline for the amendment of pleadings, and May 13, 2024, as the deadline for completion of discovery. (*Id.* at 2.)

On May 13, Defendants filed a consent motion to extend the discovery-related deadlines. (ECF No. 56-1.) The reason: Plaintiffs' counsel had not responded to Defendants' requests for a date to depose Valentine. (*Id.* at 1.) Defendants also stated that written responses remained due from both sides. (*Id.*) The Court extended discovery to August 13. (ECF No. 57 at 1.) But the deadline for amendment of pleadings, then two months past, was left unchanged.

On August 15, Defendants' counsel filed the parties' first joint status report. (ECF No. 59.) It was due August 13. (ECF No. 57 at 1.)

On August 19, six days after the deadline, Plaintiffs filed a consent motion to extend the discovery-related deadlines (but not the deadline for amendment) a second time. (ECF No. 61.) Counsel claimed they had "experienced repeated difficulty locating and communicating with Ms. Valentine, as she was moved through residential treatment programs and incarceration." (*Id.* at 1.) The Court extended discovery to December 13. (ECF No. 62 at 1.) Again, the deadline for amendment, then five months past, was left unchanged.

On December 18, Plaintiffs' counsel filed the parties' second joint status report. (ECF No. 65.) It was due December 13. (ECF No. 62 at 1.)

2

In that report, counsel explained that discovery had not yet been completed. (ECF No. 65 at 1.) Written responses remained due from both sides. (*Id.*) And counsel for Plaintiffs again described "an extremely difficult time setting Ms. Valentine's deposition[,] as she was picked up on a warrant and incarcerated in Virginia and finally extradited to Maryland." (*Id.*) They added that "[c]ounsel [had] literally spent months trying to find out where she was and communicate with her"; explained that, even after they found her, they "continue[d] to encounter the logistical difficulties of [her] incarceration"; and described those difficulties as "the primary reason for the delays in this case." (*Id.* at 1–2.) Given all that, Plaintiffs' counsel forecasted their intent to file, "no later than January 2," a motion to extend discovery a third time. (*Id.*) The extension, they said, would be "for the limited purpose" of deposing the defendant nurses.[1] (*Id.* at 2.)

But no such motion came. In an order docketed January 23, 2025, the Court set in a trial scheduling call for late February. (ECF No. 66.) It observed that all deadlines had elapsed, that Plaintiffs had not followed through on their stated intention of asking for another extension, and that deadlines could be changed only by the Court. (*Id.* at 1 & nn.1–2.)

Later that day, however, Plaintiffs *did* file a motion to extend the schedule a third time. (ECF No. 67.) They explained that, during the depositions of the defendant nurses—which took place in January, after the discovery deadline—Plaintiffs learned that three high-ranking officials of PrimeCare, the nurses' employer, had gone "to Washington County, individually interviewed all nursing/medical staff about this incident, and then had a large group meeting to discuss th[e] matter." (*Id.* at 2.) But, Plaintiffs said, there were no written records of those meetings, making depositions of the three officials essential. (*Id.*) Plaintiffs asked to extend discovery yet again—

---

[1] The defendant nurses are B. Monahan, J. Dixon, Sarah Rock, and FNU Groft. (ECF No. 1.) The nurses were the sole remaining defendants as of the time of Plaintiffs' status report, given the October 2023 dismissals of PrimeCare, Washington County, and the Washington County sheriff, (ECF No. 50), as well as the voluntary dismissal of three defendant sheriff's office employees in early December 2024, (ECF No. 64).

3

this time, to March 7. (*Id.* at 2–3.) Defendants opposed. (*Id.* at 3.)

In an order entered January 30, the Court directed Plaintiffs to show cause for their late extension request. (ECF No. 69.) Although Plaintiffs had stated why they felt an extension was justified, they had not explained why they waited over a month after the discovery deadline had passed to seek that relief. (*See id.* at 2.) The Court also noted the tardy status reports. (*Id.* at 2 n.1.)

By February 20, Plaintiffs had not shown cause. Nor had they replied to the nurses' and former defendant Washington County's opposition briefs.[2] *See* (ECF Nos. 68, 70); Local Rule 105.2(a). The Court denied the extension. (ECF No. 71.)

Also on February 20, shortly after the Court's denial, Plaintiffs finally responded to the show-cause order.[3] (ECF No. 72.) They noted that the Court's dismissal of certain defendants in October 2023 had been without prejudice and acknowledged that the Court had granted twenty-one days to amend. (*Id.* at 1 (citing ECF No. 50).) They had not done so, they reiterated, because a lack of evidence gave them "no good faith basis to modify their complaint within that narrow 21-day window." (*Id.* at 1–2.) Even so, they conceded there had been "a significant delay in the progress of this case"—a delay they blamed, "in part," on Valentine's incarceration and transportation between multiple facilities. (*Id.* at 2.)

But Plaintiffs also blamed "significant delays caused by Defense counsel either ignoring emailed dates for depositions or not being available on dates suggested by the Plaintiffs." (ECF No. 72 at 2.) And only once those depositions were underway had they learned the information

---

[2] Washington County continued to participate in the litigation even after its dismissal, given Plaintiffs' aspirations of renaming it as a defendant. (*See* ECF No. 68 at 1 (citing ECF No. 65).)

[3] Accompanying this response was a Motion to Excuse Missed Deadline. (ECF No. 73.) Plaintiffs attributed their "very brief delay" in responding to counsel's participation in a separate sensitive matter as well as their belief that a response had not been due until the late-February scheduling call. (*Id.* at 1–2.)

4

that they said constituted good cause to extend the schedule a third time—specifically, to give Plaintiffs a chance to depose the three PrimeCare officials, (*see id.* at 5–6), plus a Deputy Betts and Lieutenant Shifflet of the Washington County Sheriff's Office, whose names came up in a November 2024 deposition of a different sheriff's office employee, (*see id.* at 2–5).[4] In the event the schedule was modified to allow additional discovery, Plaintiffs again indicated they would seek to add Washington County and PrimeCare on the same claims as before—and, in the case of the former, on a purportedly new "non-delegable duty theory." (*Id.* at 5, 7–8.) Plaintiffs also anticipated adding Lieutenant Shifflet. (*Id.* at 5.)

On February 26, the Court held a status and scheduling call with counsel for Plaintiffs, the nurses, and former defendants PrimeCare and Washington County. After the call, the Court granted Plaintiffs' request to modify the schedule a third time, extending all discovery-related deadlines to March 31. (ECF No. 74.) It cautioned that the deadlines were extended "for the limited purpose of allowing Plaintiffs to conduct depositions of the five people identified during the February 26 call"—namely, Deputy Betts, Lieutenant Shifflet, and the three high-ranking PrimeCare officials. (*Id.* at 1.) It also made clear that depositions were permitted "only for the limited purpose of gathering evidence relevant to claims against *current* Defendants in this matter." (*Id.* (emphasis in original).)

Nevertheless, on April 1, Plaintiffs filed the instant motion to amend. (ECF No. 76.) Relying on evidence gathered during the five depositions, Plaintiffs seek to re-add PrimeCare on the same 42 U.S.C. § 1983 theories as before, (*see id.* at 4–6), re-add Washington County on the nondelegable duty theory, (*see id.* at 7–10), and add Lieutenant Shifflet on a theory of individual

---

[4] Despite Plaintiffs having learned in November 2024 of Deputy Betts' and Lieutenant Shifflet's possible knowledge of and/or involvement in the case, (*see* ECF No. 72 at 3–4), Plaintiffs mentioned neither individual in their January 2025 motion to modify the schedule. (*See* ECF No. 67.) Plaintiffs did say, however, that upon learning of Shifflet's possible involvement, they "immediately" requested to depose him. (ECF No 72 at 5.) According to Plaintiffs, counsel for Washington County agreed to make Shifflet available, but as of February 20, still had not done so. (*Id.*)

5

§ 1983 liability, (*see id.* at 6–7).

On April 2, Plaintiffs' counsel filed the parties' third joint status report. (ECF No. 77.) It was due March 31, (ECF No. 74 at 1), illustrating "yet another instance of the parties failing to meet court deadlines—especially deadlines for filing status reports," (ECF No. 79 at 1 n.1).

After a status call later that day, the Court set a briefing schedule on the motion to amend. (ECF No. 79.) It observed that the motion was filed over a year after the deadline for moving for joinder of additional parties and amendment of pleadings, (*id.* at 1)—which, again, was March 14, 2024, (ECF No. 54 at 2). It also directed the parties "to focus in particular on whether and how leave to amend might prejudice current, former, or new parties to this matter." (ECF No. 79 at 2.) All defendants—current and proposed, new and old—oppose. (*See* ECF Nos. 81, 82.)

## II. LEGAL STANDARDS

An untimely motion for leave to amend will be granted only if it satisfies *both* the good-cause standard of Federal Rule of Civil Procedure 16(b)(4) and the standard of Rule 15(a)(2) for allowing the amendment of pleadings. *G.W. Aru, LLC v. W.R. Grace & Co.-Conn.*, 344 F.R.D. 446, 449 (D. Md. 2023) (citation omitted). The good-cause inquiry comes first; if a party has not shown good cause for its tardy motion, the Court need not consider the substance of that party's request. *Id.* (citing *Cook v. Howard*, 484 F. App'x 805, 814–15 (4th Cir. 2012)). In this area, the district court's discretion is "substantial—especially where Rule 16(b) applies in addition to Rule 15(a)(2)." *Moore v. Equitrans, L.P.*, 818 F. App'x 212, 218 (4th Cir. 2020).

In the context of amendment to the pleadings, the good-cause inquiry "focuses less on the substance of the proposed amendment and more on the timeliness of the motion to amend and the reasons for its tardy submission." *Wonasue v. Univ. of Md. Alumni Ass'n*, 295 F.R.D. 104, 107 (D. Md. 2013) (cleaned up). To establish good cause, a moving party must show that deadlines could not "reasonably be met despite the party's diligence." *G.W. Aru*, 344 F.R.D. at 446 (quoting

6

*Cook*, 484 F. App'x at 815). The Court considers "whether the moving party acted in good faith, the length of the delay and its effects, and whether the delay will prejudice [any] non-moving party." *Wonasue*, 295 F.R.D. at 107 (citation omitted). Good cause for a tardy amendment motion "generally exists when at least some of the evidence needed for a plaintiff to prove his or her claim did not come to light until after the amendment deadline." *G.W. Aru*, 344 F.R.D. at 449 (cleaned up) (citation omitted). But it does not exist if the plaintiff knew of the conduct giving rise to a claim and "simply failed to raise it in an initial complaint." *Id.* (quoting *Faulconer v. Centra Health*, 808 F. App'x 148, 152 (4th Cir. 2020)); *see generally Wonasue*, 295 F.R.D. at 107 ("Carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." (citation omitted)).

If good cause exists, the Court next looks to Rule 15, which provides that "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "This is a relatively generous standard." *Rouse v. Fader*, 758 F. Supp. 3d 397, 403 (D. Md. 2024). Leave should be denied "only when the amendment would be prejudicial to [an] opposing party, there has been bad faith on the part of the moving party, or the amendment would [be] futile." *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) (en banc) (ultimately citing *Foman v. Davis*, 317 U.S. 178, 182 (1962)). Even so, the Court retains broad discretion to deny the request "so long as it does not outright refuse 'to grant the leave without any justifying reason.'" *Equal Rights Ctr. v. Niles Bolton Assocs.*, 602 F.3d 597, 603 (4th Cir. 2010) (quoting *Foman*, 371 U.S. at 182).

## III.   ANALYSIS

Plaintiffs have not established good cause to modify the schedule. And even if they had, the Court would decline leave to amend under the rubric of Rule 15. The Motion will be denied.

### A.   Plaintiffs Have Not Shown Good Cause to Modify the Schedule.

Plaintiffs' motion for leave to amend arrived on April 1, 2025, over a year after the

7

amendment deadline of March 14, 2024. (*See* ECF Nos. 54, 76.) Plaintiffs argue that their serious tardiness is excused by good cause in the form of material evidence that came to light after the amendment deadline had passed. (ECF No. 86 at 2 (quoting *Wonasue*, 295 F.R.D. at 107).)

Plaintiffs are correct that good cause "generally exists when at least some of the evidence needed for a plaintiff to prove his or her claim did not come to light until after the amendment deadline." *G.W. Aru*, 344 F.R.D. at 449 (cleaned up). And the Court accepts that, here, the late-conducted depositions may have revealed previously unknown facts.[5]

But the inquiry does not end there. The Court must ask *why* information was discovered late. In addition to the specific circumstances that led to the missed deadline, this inquiry focuses "appropriately and necessarily on the movant's overall conduct of the case." *Cook*, 484 F. App'x at 819 (citations omitted). To the extent the delay was due to Plaintiffs' own lack of diligence, there is no good cause. *See Wonasue*, 295 F.R.D. at 108.

Such is the situation here. Start with good faith. The Court is not prepared to say that Plaintiffs and their counsel have acted in *bad* faith. But neither will it turn a blind eye to the delays and late submissions that have plagued this case. At three of the four discovery deadlines, the parties submitted their status reports late, including twice by Plaintiffs' counsel. (*See* ECF Nos. 57, 59 (due August 13, filed August 15); ECF Nos. 62, 65 (due December 13, filed December 18); ECF Nos. 74, 77 (due March 31, filed April 2).) Twice, Plaintiffs have sought to extend the discovery deadline after the deadline had already elapsed. (*See* ECF Nos. 57, 61 (deadline August

---

[5] The Court observes that Plaintiffs' theory of nondelegable duty, which they invoke as the sole ground for bringing Washington County back into this case, (*see* ECF No. 76 at 7–10), does *not* appear to turn on any facts discovered after the amendment deadline. Rather than citing newly discovered facts to support that theory, Plaintiffs speak only of the unsettled nondelegable-duty caselaw. (*See id.*) This leaves the distinct impression that Plaintiffs discovered a new legal theory—or sought to revive an old one that was never pressed as a claim, (*see* ECF No. 1 ¶ 113)—rather than found a way, through discovery, to buttress a theory that was previously unsupported. That lies at the heartland of situations that do not constitute good cause for a late-filed amendment. *See G.W. Aru*, 344 F.R.D. at 449 (citing *Faulconer*, 808 F. App'x at 152).

8

13, filed August 19); ECF Nos. 62, 67 (deadline December 13, filed January 23).) The latter request was also tardy by Plaintiffs' own standards, counsel having stated in their joint status report that they "w[ould] file" it "no later than January 2" (which, to be clear, would still have been late). (*See* ECF No. 65 at 2.) And now Plaintiffs seek to amend the complaint over a year after the amendment deadline elapsed—notably, without ever having requested its extension.[6]

As the Court admonished the parties before the most recent late submission, "a scheduling order 'is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril.'" (ECF No. 69 at 1 (quoting *Rassoull v. Maximus, Inc.*, 209 F.R.D. 372, 374 (D. Md. 2002) (citation omitted).) In the aggregate, belated filings can corrode a party's credibility, such that when it comes time to take stock of that party's diligence, the party comes up short. Pervasive tardiness and missed opportunities for prospective relief from imminent deadlines are not typical of what the Court would call a good-faith effort.

At multiple junctures over the year-and-a-half–long discovery period, Plaintiffs' counsel have also described the difficulty of keeping in touch with their lead client. (*See* ECF No. 61 at 1 (noting "repeated difficulty locating and communicating with Ms. Valentine, as she was moved through residential treatment programs and incarceration"); ECF No. 65 at 1 (describing "an extremely difficult time setting Ms. Valentine's deposition as she was picked up on a warrant and incarcerated in Virginia and finally extradited to Maryland," and having "literally spent months trying to find out where she was and communicate with her"); ECF No. 72 at 2 (acknowledging "a significant delay in the progress of this case due, in part, to [Valentine] being reincarcerated and moved into various facilities"); *see also* ECF No. 72-1 at 2, 10 (emails among counsel noting

---

[6] This is especially puzzling given that Plaintiffs have repeatedly sought the extension of discovery deadlines, (*see, e.g.*, ECF Nos. 61, 67), and have, throughout the litigation, stated their intention eventually to amend the complaint, (*see, e.g.*, ECF No. 51 at 1; ECF No. 65 at 2). It is unclear why that desire never translated into a request to change the amendment deadline. (*See* ECF No. 51.)

9

these issues).) That problem now appears to be solved. (*See* ECF No. 72 at 2.)

Even so, these difficulties remain relevant to the good-faith inquiry. The Court is attuned to the problems of communicating with incarcerated clients, to say nothing of arranging for them to sit for a deposition. *See, e.g., McNair v. McMickens*, 115 F.R.D. 196, 200 (S.D.N.Y. 1987); *Certeza v. Wexford Health Sources, Inc.*, Civ. No. TDC-18-1791, 2022 WL 2704057, at *5 (D. Md. July 11, 2022); *Atl. Sounding Co., Inc. v. Penn*, Civ. No. 10-1779, 2011 WL 1192986, at *3 (E.D. La. Feb 17, 2011); *Penton v. City of Pearl*, No. 24-CV-107, 2024 WL 5190364, at *2 (S.D. Miss. Dec. 20, 2024). But all litigants, even incarcerated ones, must make reasonable efforts to prosecute their cases timely and efficiently. *Cf. Garraway v. Smith*, No. 12-CV-924, 2020 WL 8910842, at *3 (W.D.N.Y. Apr. 2, 2020) (declining to excuse late filing of appeal notice despite purported difficulties of communicating with incarcerated client); *Gatlin v. CoreCivic, Inc.*, No. 21-cv-00680, 2022 WL 474282, at *4 (D.N.M. Feb. 16, 2022) (same, but for late service of process). While lawyers owe a duty to their clients and to the Court to keep the lines of contact open—particularly where, as here, the client may be at a communication disadvantage—the onus is also on the client to make herself available. At a minimum, that means apprising her lawyers of her whereabouts. Absent truly extraordinary circumstances, that should not take "literally . . . months."[7] (ECF No. 65 at 1.)

Turn, then, to "the length of the delay and its effects." *See Wonasue*, 295 F.R.D. at 107 (citation omitted). Where the good-faith inquiry is concerned more with the fact of lateness as such, the length-of-the-delay inquiry considers the lateness's magnitude. Discovery in this case has run for nearly a year beyond its initial end date. (*Compare* ECF No. 54 (May 13, 2024), *with*

---

[7] Perhaps not all delays are attributable to difficulty reaching Valentine. (*See, e.g.*, ECF No. 72 at 2 (describing the hardship of arranging to depose her while incarcerated, along with "significant delays caused by Defense counsel either ignoring emailed dates . . . or not being available on dates suggested by the Plaintiffs").) But by Plaintiffs' own admission, several are. And because it is their burden to establish good cause, the "touchstone" of which is diligence, *Faulconer*, 808 F. App'x at 152, the Court is not deeply moved by appeals to other parties' unclean hands.

10

ECF No. 74 (March 31, 2025).) And the Court need not ignore that the case is now over two and a half years old.[8] Plaintiffs ask, in essence, for the Court to conclude that they have good cause to ask, over a year late, for something that will delay the case even further. After all, to alleviate prejudice to any newly added defendants (to the extent the Court considers *and* grants the late-filed motion), the Court would need to permit discovery by those parties.[9] The resulting delay, "with its attendant burdens on the opponent and the court," is an appropriate ground on which to deny Plaintiffs' request. *Miceli v. JetBlue Airways Corp.*, 914 F.3d 73, 86 (1st Cir. 2019); *see Smith v. Tenet Healthsystem SL, Inc.*, 436 F.3d 879, 887 (8th Cir. 2006); *Garcia v. Volkswagen Grp. of Am.*, No. 19-cv-331, 2022 WL 18034353, at *3 (E.D. Va. Mar. 23, 2022).

Finding good cause would also ignore what has amounted to an indefinite stringing-along of the defendants, new and old. PrimeCare and Washington County were dismissed in October 2023. (*See generally* ECF Nos. 49–50.) The Court then imposed a twenty-one–day amendment deadline, (ECF No. 50 at 1), which it later extended to March 14, 2024, (ECF No. 54 at 2). The Court will not allow the threat of litigation to hang over nonparties, like the sword of Damocles, for years on end. They—and especially the *former* parties—are entitled to rely on the schedule. So, too, are the nurses, for whom the schedule is of arguably greater importance, as they remain in the case and thus have an even more direct stake in the speedy resolution of long-simmering claims. *See Wallace v. AlliedBarton Sec. Servs., LLC*, 309 F.R.D. 49, 53 (D.D.C. 2015).

Finally, there is the issue of prejudice.[10] Plaintiffs argue, rather cursorily, that "opposing

---

[8] While "delay alone is not sufficient reason to deny leave to amend" under Rule 15, *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986), the length of a delay does inform a Court's good-cause consideration under Rule 16, *see, e.g., Wonasue*, 295 F.R.D. at 107.

[9] That Plaintiffs "do not foresee that additional discovery would be required based on the amendments," (ECF No. 76 at 3), does not absolve the Court of its duty to extend the opportunity to those who did not have it previously. *See* Fed. R. Civ. P. 26(b)(1). That is not Plaintiffs' call to make.

[10] Unlike "the length of the delay and its effects," *Wonasue*, 295 F.R.D. at 107, the Court considers "prejudice" to refer to only those effects related to a party's chance of success on the merits (as opposed to the real but freestanding harms of living in uncertainty and wasting time and/or money).

11

parties would not be prejudiced," as "all relevant parties have been aware of this case since Ms. Valentine gave birth" and "have had their general interests represented by counsel . . . throughout this litigation." (ECF No. 76 at 3.) But a mere overlap in counsel does not "eliminate[] concerns regarding prejudice to counsel's chosen legal strategy and unique obligations to the proposed defendants." *Hodges v. Mayor & City Council of Annapolis*, Civ. No. SAG-15-3537, 2017 WL 1832199, at *4 (D. Md. May 8, 2017). That is most true of Washington County, whose counsel no longer represents any named parties after the last such parties were dismissed in December 2024.[11] (*See* ECF Nos. 63–64.) Prejudice may also result from Washington County and PrimeCare having to conduct discovery at a much later date than Plaintiffs. *See nTech Sols., Inc. v. Meta Dimensions, Inc.*, Civ. No. JMC-21-673, 2024 WL 4816021, at *4 (D. Md. Nov. 18, 2024) (finding that reopening a case whose underlying events took place years before "would very likely prejudice" the nonmovant, given the possibility "that witness memories may have faded, or that relevant documentary evidence may be lost"); *see also Laber*, 438 F.3d at 427.

Plaintiffs have not established good cause for their over-one-year-late motion to amend the complaint. On that basis alone, the Motion to Amend will be denied.

### B. The Court Would Not Grant Leave to Amend in Any Event.

Because Plaintiffs have not shown good cause for their dilatory motion, the Court need not address whether to grant leave to amend under Rule 15. *See G.W. Aru*, 344 F.R.D. at 449.

But even if the Court did take up that issue, it would not rule in Plaintiffs' favor. After discounting the factor of delay as such, which, again, is not a valid consideration under Rule 15, *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986), the other issues that animate the good-cause determination—a lack of good faith and the serious possibility of prejudice—

---

[11] PrimeCare's counsel continues to represent the nurses.

strongly disfavor leave to amend. Time is the enemy of all amendment-seeking plaintiffs, even under Rule 15. *See Laber*, 438 F.3d at 427 ("[T]he further the case [has] progressed . . . the more likely it is that the amendment will prejudice the defendant or that a court will find bad faith on the plaintiff's part."); *Equitrans*, 818 F. App'x at 219 (describing the district court's "substantial discretion to deny leave to amend, especially at [a] late stage of litigation").

Nor does justice require leave to amend. *See* Fed. R. Civ. P. 15(a)(2). The claims against the nurses remain live, and no dispositive motions are pending, meaning that Plaintiffs still have an opportunity to press the substantive core of their claims before a factfinder. *See Laber*, 438 F.3d at 426 (describing Rule 15 as a "liberal rule" that "gives effect to the federal policy in favor of resolving cases on their merits instead of disposing of them on technicalities"). And besides, Plaintiffs' interest in justice is not the only one that matters. The Court must balance a plaintiff's interest in building her strongest case with a defendant's (and the judiciary's) in resolving it fairly and efficiently. Granting leave to amend would tip that balance against the named and proposed defendants.

## IV. CONCLUSION

The Court is not blind to the realities of communicating with incarcerated clients or to the gravity of the factual allegations in this action. Nor does it find that Plaintiffs are responsible for every delay in this case. But it is Plaintiffs' burden to show good cause for their dilatory motion. And a critical mass of the reasons why the motion is late *are* attributable to Plaintiffs—reasons that include their chronic lateness in filing, their failure to ask to extend the amendment deadline, and Valentine's neglect in contacting her lawyers with her whereabouts. Even without more, this lack of diligence is fatal. And here, there *is* more, in the form of undue delay and likely prejudice to the defendants, new and old.

Accordingly, it is ORDERED that:

1. Plaintiffs' Motion for Leave to File an Amended Complaint, (ECF No. 76), is DENIED.

2. The parties are REMINDED of their joint obligation, no more than two days after the entry of this decision, to move for a trial scheduling conference in this matter.

DATED this 19 day of May, 2025.

BY THE COURT:

*James K. Bredar*
James K. Bredar
United States District Judge